UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY HOLLIE,

      Petitioner,

v.

DUNCAN MACLAREN,

      Respondent.

Case No. 15-cv-10564
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

---

**OPINION AND ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT [12] AND RESOLVING OTHER MATTERS**

---

Petitioner Larry Hollie, a Michigan prisoner, was convicted of first-degree murder and other charges stemming from a shooting incident in Detroit, Michigan. He has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (R. 1.) Respondent Duncan Maclaren moved for summary judgment and dismissal of the habeas petition, arguing that Petitioner failed to comply with the applicable statute of limitations. (R. 12.) Petitioner subsequently filed a motion to supplement the habeas petition with a claim of actual innocence (R. 14), and he recently filed an amended habeas corpus petition (R. 15). For the reasons that follow, the Court grants Petitioner's motion to supplement his habeas petition and his motion for permission to respond to Respondent's reply (R. 14, 17). Nevertheless, because the Court agrees with Respondent that the habeas petition is untimely, Respondent's motion for summary judgment is granted (R. 12), and the Petition (R. 15) will be dismissed with prejudice.

**I. BACKGROUND**

Hollie was convicted on charges stemming from an incident on East Alexandrine Street in Detroit, in which James McCray and Bruce Cooper were shot.

The evidence at Petitioner's second jury trial[1] in Wayne County Circuit Court established that McCray and Cooper were seated in McCray's car on East Alexandrine Street on the afternoon of August 4, 2000. They were engaged in conversation with two young women and Larry Speight, who were standing outside McCray's car. (R. 13-2, PID 160.) At some point, Petitioner and three other men arrived on the scene in a black Dodge Spirit, which Petitioner was driving. One of the young women knew Petitioner and asked him about his child. Petitioner responded to the inquiry and then asked McCray about his car.

All four men in the Dodge Spirit (Petitioner, Derrick Fowler, Shawn Davis, and Eddie Perkins) subsequently exited their car with firearms drawn. Davis pointed his shotgun at McCray's car. Perkins had two handguns. Petitioner stayed by his car, but he pointed his gun at McCray's car. Fowler also had a weapon.

McCray, Cooper, and Speight put up their hands, but the other people who had been standing nearby ran away. McCray begged the armed men not to kill him and Cooper, and he told the men that they could have his car and jewelry. Witnesses subsequently heard numerous gunshots and then saw the four perpetrators leave in their car. McCray died from multiple gunshot wounds sustained during the incident. Cooper also was shot, but he survived and testified against Petitioner and Derrick Fowler at their joint jury trial.

Petitioner was charged with first-degree murder, Mich. Comp. Laws § 750.316(1)(a), assault with intent to commit murder, Mich. Comp. Laws § 750.83, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.

---

[1] Petitioner's first trial resulted in a hung jury.

2

Neither Petitioner nor Fowler testified or presented any witnesses at trial. Fowler's defense was that he was not present during the incident. Petitioner, although conceding he was present in the car, claimed that he did not intend to kill or harm anyone, that he did not assist anyone in committing the crimes, and that he was not guilty of the charges.

On February 26, 2002, the jury found Petitioner guilty of first-degree murder for the death of James McCray, assault with intent to commit murder for the shooting of Bruce Cooper, felon in possession of a firearm, and felony firearm. On March 19, 2002, the trial court sentenced Petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of life in prison for the murder conviction, eighteen to thirty years for the assault conviction, and two and a half to five years for the felon-in-possession conviction.

In his appeal as of right, Petitioner claimed that the prosecutor's remarks during closing arguments deprived him of a fair trial. However, Petitioner never objected to any of the allegedly improper comments. On review for plain error, the Michigan Court of Appeals affirmed Petitioner's convictions after concluding that none of the prosecutor's challenged remarks qualified as misconduct or affected Petitioner's trial. *People v. Hollie*, No. 241436, 2003 WL 22928844 (Mich. Ct. App. Dec. 11, 2003) (unpublished).

Petitioner raised the same prosecutorial-misconduct claim in the Michigan Supreme Court, which denied leave to appeal on May 28, 2004. *People v. Hollie*, 470 Mich. 868; 680 N.W.2d 897 (2004) (table).

Nine years later, in 2013, Petitioner filed a motion for relief from judgment. (R. 13-25.) He subsequently moved to withdraw the motion (R. 13-26), but then asked the trial court to ignore his motion to withdraw and instead to allow him to supplement the motion for relief from judgment. (R. 13-27.) Petitioner ultimately asserted several arguments regarding alleged

3

prosecutorial misconduct and ineffective assistance of counsel. The trial court denied Petitioner's motion on the grounds that Petitioner previously raised, or could have raised, his claims on direct appeal and that his claims lacked merit. *See People v. Hollie*, No. 00-012248-01, slip op. (Wayne County Cir. Ct. Dec. 17, 2013).

After the trial court denied a motion for reconsideration, Petitioner appealed the decision. The Michigan Court of Appeals denied leave to appeal because Petitioner failed to establish "good cause" under Michigan Court Rule 6.508(D)(3)(a) for not raising the issues previously. *People v. Hollie*, No. 320966, slip op. (Mich. Ct. App. June 3, 2014). Petitioner appealed to the Michigan Supreme Court, which denied leave to appeal on November 25, 2014, because Petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *People v. Hollie*, 856 N.W.2d 47 (2014) (table).

On January 22, 2015, Petitioner signed and dated his habeas corpus petition, and on February 12, 2015, the Clerk of the Court filed the Petition. (R. 1.) As grounds for relief, Petitioner cited several instances of alleged prosecutorial misconduct, violations of his right to a public trial, a constitutionally deficient voir dire process, and ineffective assistance of trial and appellate counsel. (R.1, PID 1–12.)

Petitioner subsequently sought a stay of these proceedings (R. 7, 9) to exhaust state remedies with respect to an affidavit he received from Corey Howell on February 23, 2015. Howell purports to be a witness to the hours before the events that led to Petitioner's convictions, and Petitioner claimed that Howell's affidavit would enable him to pursue a new claim of actual innocence in the state courts.

On September 4, 2015, the Court denied Petitioner's motions for a stay. The Court noted that Petitioner could not assert actual innocence as a standalone claim in his federal petition, and

4

to the extent he sought to use a claim of actual innocence as an exception to the statute of limitations, he did not need to exhaust state remedies to do so. (R. 11.)

Respondent subsequently moved for summary judgment on the basis that Petitioner did not comply with the statute of limitations. (R. 12.) Petitioner then moved to supplement his habeas petition with a claim of actual innocence based on Corey Howell's affidavit. (R. 14.) Petitioner also filed an amended Petition, which incorporates a claim of innocence with Petitioner's other claims about the trial court, the prosecutor, and his counsel. (R. 15.) Respondent filed a reply in which he asserts that Petitioner's actual-innocence claim does not entitle him to equitable tolling of the statute of limitations. (R. 16.)

Finally, on February 12, 2016, Petitioner filed a motion for permission to respond to Respondent's reply. Petitioner maintains in his motion that his actual-innocence claim entitles him to equitable tolling of the limitations period, that Howell's information was not discoverable sooner, and that the witnesses' identification of him was not reliable. (R. 17.)

## II. ANALYSIS

In a habeas proceeding, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Sanders v. Freeman*, 221 F.3d 846, 851 (6th Cir. 2000) (quoting Fed. R. Civ. P. 56(c)).

Respondent's summary-judgment motion is based on the statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Respondent argues that the appropriate statute of limitations expired on August 27, 2005, and therefore, the Petition, filed nine-and-a-half years later on January 22, 2015, is untimely.

5

Petitioner responds with an affidavit from Corey Howell containing new information about the hours before the shootings. Petitioner contends that the statute of limitations did not begin running until February 23, 2015, the date Howell signed the affidavit. Alternatively, Petitioner says that the affidavit proves he is actually innocent of the crimes of conviction, and therefore the Court may consider his Petition despite its untimeliness. The Court is not convinced by either of Petitioner's arguments and agrees with Respondent that the Petition is untimely. Therefore, Respondent's motion will be granted and the Petition will be dismissed.

### A. AEDPA Statute of Limitations

AEDPA established a one-year period of limitation for state prisoners to file their federal petitions for writ of habeas corpus. *Wall v. Kholi*, 562 U.S. 545, 550 (2011) (citing 28 U.S.C. § 2244(d)(1)). The period of limitations runs from the latest of the following four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The limitations period is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" in state court. 28 U.S.C. § 2244(d)(2).

Petitioner is not relying on a newly recognized constitutional right. *See* 28 U.S.C. § 2244(d)(1)(B). Nor has he shown that the State created an impediment to filing a timely habeas

petition. *See* 28 U.S.C. § 2244(d)(1)(C). But Petitioner argues that the start date set forth in 28 U.S.C. § 2244(d)(1)(D) should apply because Howell did not sign his affidavit until February 23, 2015, and Petitioner could not have known of an "unknown" fact. (R. 17, PID 2381.)

"Section 2244(d)(1)(D) requires a habeas petitioner to file a claim within one year of the time in which new evidence 'could have been discovered through the exercise of due diligence.'" *McQuiggin v. Perkins*, – U.S. –, 133 S. Ct. 1924, 1935 (2013). As a panel of the Sixth Circuit has explained,

> [t]he question under the provision is not when prisoners first learned of the new evidence; it is when they should have learned of the new evidence had they exercised reasonable care. Habeas claimants invoking this provision shoulder the burden of proving that they exercised due diligence.

*Townsend v. Lafler*, 99 F. App'x 606, 608 (6th Cir. 2004) (internal citation omitted).

Howell avers in his affidavit that he was at Petitioner's house on August 4, 2000, the day of the shootings. (R. 9, PID 51.) Howell claims that Petitioner told Howell and other persons who were present that he had received a phone call informing him about a man named "G" who was driving Petitioner's car a few blocks from the house. (R. 9, PID 51.) Howell says that Petitioner stated he was going to talk to "G" to see whether the car was his. (R. 9, PID 51.) But when Petitioner left the room to get his keys, Howell says that he observed Derrick Fowler and Shawn Davis decide to accompany Petitioner—with guns. (R. 9, PID 51.) Howell says he saw Fowler and Davis put some guns in a bag, and he heard them announce their intent to harm whoever had taken the car. (R. 9, PID 51.) According to Howell, Fowler and Davis stated that Petitioner should not be informed about the guns because he would not have wanted to approach "G" with weapons. (R. 9, PID 51–52.) Howell says that he did not tell Petitioner what he saw and heard before trial, nor did he come forward until now, because he was afraid of Fowler and Davis and "did not want to be labeled as a snitch." (R. 9, PID 52.)

7

Petitioner alleges that, according to Howell's affidavit, the crime was planned in secret and, therefore, he could not have known the shooters were conspiring to kill the victim. (R. 17, PID 2381.) Petitioner implies that he was unaware of Howell's knowledge until Howell was incarcerated at the same prison as Petitioner a few months before Howell prepared his affidavit. (R. 9, PID 52; R. 17, PID 2382.)

Petitioner's claims are not supported by the record. If Howell's affidavit is believed, Petitioner was with Howell, Derrick Fowler, and Shawn Davis before the shooting on August 4, 2000. Thus, Petitioner knew of the possibility that Howell could have had useful information about the day of the shooting. Yet, Howell was never called as a witness during trial nor does Petitioner identify any efforts to contact him before trial. Indeed, Petitioner alleges that Howell was a free man before Petitioner was incarcerated (R. 17, PID 2382), and it thus appears that Petitioner or his counsel could have communicated with Howell and asked him whether he knew anything about Fowler and Davis being involved in the crime. He or his counsel also could have asked Howell whether Fowler and Davis said or did anything suspicious at Petitioner's house when Petitioner left the room to find his keys.

The Court thus concludes that Petitioner could have discovered the factual predicate for Howell's affidavit before trial. It follows that Section 2244(d)(1)(D) does not govern the start of the limitations period, and that the one-year clock did not start when Howell signed his affidavit.

Because 28 U.S.C. § 2244(d)(1)(D) does not apply, the statute of limitations began to run when Petitioner's convictions "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The Supreme Court has explained that each prong of the subsection "relates to a distinct category of petitioners":

> For petitioners who pursue direct review all the way to [the Supreme] Court, the judgment becomes final at the "conclusion of direct review"—when [the

8

Supreme] Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in [the Supreme] Court, or in state court, expires.

*Gonzalez v. Thaler*, — U.S. — , 132 S. Ct. 641, 653–54 (2012); *see also Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). A petitioner has ninety days after entry of the judgment of a state court of last resort to seek a writ of certiorari in the Supreme Court. Sup. Ct. R. 13.1.

On May 28, 2004, the Michigan Supreme Court denied Petitioner's leave to appeal on direct review. His convictions became final ninety days later on August 26, 2004, when he did not apply for a writ of certiorari. The statute of limitations began to run on the following day, and it ran uninterrupted for one year, expiring on August 26, 2005. Petitioner took no further action in his case until 2013, when he filed a motion for relief from judgment in the state trial court. The habeas petition filed in 2015 is therefore untimely, absent equitable tolling of the limitations period or a credible claim of actual innocence.

## B. Equitable Tolling

"The doctrine of equitable tolling allows courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000)). A petitioner is entitled to equitable tolling of the habeas statute of limitations "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Petitioner waited almost ten years after the Michigan Supreme Court denied leave to appeal to pursue further relief in his case. The Court has already found that Howell was known to

9

Petitioner at the time of the crime and nothing, let alone an extraordinary circumstance, has been identified that prevented him from seeking or obtaining information from Howell. Further, none of Petitioner's claims in his Petition rest on Howell's affidavit. The Court therefore declines to apply equitable tolling to the limitations period.

### C.   Actual Innocence

Petitioner maintains his innocence of the crimes for which he was convicted. "[A]ctual innocence, if proved, serves as a gateway through which habeas petitioners may pass when the impediment to consideration of the merits of their constitutional claims is expiration of the statute of limitations." *McQuiggin v. Perkins*, — U.S. —, 133 S. Ct. 1924, 1928 (2013). Nevertheless, "tenable actual-innocence gateway pleas are rare[.]" *Id*. (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). A petitioner must show that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup*, 513 U.S. at 329). "In assessing the adequacy of petitioner's showing . . . the district court is not bound by the rules of admissibility that would govern at trial." *Schlup*, 513 U.S. at 327; *see also In re Lott*, 424 F.3d 446, 455 (6th Cir. 2005) ("The *Schlup* Court recognizes that in evaluating claims of innocence, habeas courts should consider 'a broader array of evidence' than that available at trial." (citation omitted)). "[A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown." *Id*. at 1928.

Petitioner states that Howell's affidavit "strikes at the heart of [Bruce] Cooper's trial testimony, that Petitioner Hollie had a gun." (R. 7, PID 31.) Petitioner also says that the affidavit shows the shooting was not "premeditated." (R. 7, PID 32.) The hearsay statements in the

affidavit that Fowler and Davis did not think Petitioner would go looking for "G" if he knew that Fowler and Davis were bringing guns, do not establish that Petitioner did not have a gun. Nor do they establish that Petitioner never learned the others had firearms. The affidavit discusses only a brief period of time before the shooting while Petitioner was still at home. The affidavit says nothing about what occurred after Petitioner left the house with Fowler, Davis, and Perkins. During the time that he left home and traveled in the car with Fowler and Davis to the scene of the shooting, Petitioner could have learned of the weapons that Fowler and Davis supposedly placed in a bag and took with them in Petitioner's car. Indeed, it may have been difficult to hide the weapons from Petitioner, as two of the five weapons found in Petitioner's car shortly after the shooting were long guns. Further, once Petitioner, Fowler, Davis, and Perkins encountered the victims, Petitioner could have abandoned his friends and walked the short distance home. Instead, according to Bruce Cooper and Larry Speight, Petitioner remained at the scene, and, after Perkins exited Petitioner's car with two handguns, Petitioner also exited the car and pointed a gun at the victims. (R. 13-12, PID 929; R. 13-13, PID 989; R. 13-15, PID 1383–85.)

Finally, Howell signed the affidavit fourteen-and-a-half years after the shooting and thirteen years after Petitioner's trial. The long delay in preparing the affidavit also leads the Court to conclude that Petitioner has not made a reliable showing of actual innocence. *See McQuiggin*, 133 S. Ct. at 1928.

Given the timing of the events described in Howell's affidavit as compared to the eyewitness testimony and the number of weapons in Petitioner's car, the Court cannot find that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt. Thus, Petitioner has failed to assert a tenable claim of actual innocence, and AEDPA's time limitation applies here. Therefore, the Petition will be dismissed as untimely.

11

### III. CONCLUSION

Applying AEDPA, the limitations period in this case expired several years before Petitioner filed his habeas corpus petition. Equitable tolling is not appropriate under the circumstances present here, and Petitioner has not made a credible showing of actual innocence. Thus, there is no genuine dispute as to any material fact, and Respondent is entitled to judgment as a matter of law.

Accordingly, Respondent's motion for summary judgment and dismissal of the habeas petition (R. 12) is GRANTED.

IT IS FURTHER ORDERED that Petitioner's motion to supplement his initial habeas petition with a claim of actual innocence (R. 14) is GRANTED.

IT IS FURTHER ORDERED that Petitioner's request for leave to file a response to Respondent's reply (R. 17) is GRANTED. The arguments made in the motion have been considered.

IT IS FURTHER ORDERED that the initial habeas corpus petition (R. 1) and the amended petition (R. 15) are DISMISSED with prejudice.

The Court declines to issue a certificate of appealability in this case. "[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When, as here,

> the district court denies a habeas petition on procedural grounds without reaching
> the prisoner's underlying constitutional claim, a [certificate of appealability]
> should issue when the prisoner shows, at least, that jurists of reason would find it
> debatable whether the petition states a valid claim of the denial of a constitutional

right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists would not find the Court's procedural ruling debatable because the habeas petition is clearly time-barred. Reasonable jurists also would not find it debatable whether the petition states a valid claim of the denial of a constitutional right. The Court therefore declines to issue a certificate of appealabilty. The Court nevertheless grants leave to appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

**SO ORDERED.**

s/Laurie J. Michelson
LAURIE J. MICHELSON
Dated: September 16, 2016                          U.S. DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 16, 2016.

s/Keisha Jackson
KEISHA JACKSON
Case Manager